STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

Zachary G.F. Abrahamson (CABN 310951)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 308-7829
    Fax: (415) 436-7234
    Zachary.Abrahamson2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:22-mj-70879-MAG |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | Date: July 13, 2022 |
| EDWIN MENDOZA, | Time: 10:30 a.m. |
| Defendant. | |

## I.     INTRODUCTION

Edwin Mendoza is a professional drug-dealer and serial recidivist who plies San Francisco's Tenderloin neighborhood with fentanyl, methamphetamine, and other controlled substances. Over the last three months alone, Mendoza has sold law enforcement more than half a *pound* of fentanyl and roughly 160 grams of methamphetamine in six separate transactions. During that time, San Francisco police also arrested Mendoza for fentanyl sales unconnected with this investigation. Within weeks of that arrest, Mendoza was again dealing fentanyl in the same neighborhood where he had been arrested.

Only pretrial detention can protect the community from the threat posed by Mendoza's narcotics and secure his appearance for trial. Mendoza has a troubling history with flight and release conditions: Three times during the summer and fall of 2021, Mendoza ran from arresting officers. He violated stay-

UNITED STATES' DETENTION MEMORANDUM     1
3:22-mj-70879-MAG

away orders barring him from locations in San Francisco's Tenderloin.  And after pleading guilty to a narcotics charge in January 2022, Mendoza sold the fentanyl and methamphetamine in this case while on probation.

The Court should detain Mendoza.  Release would return a significant fentanyl distributor—Mendoza delivered up to three ounces at a time—to the center of San Francisco's fentanyl epidemic.  Over the past two years, about 1,300 people died from drug overdoses in San Francisco—nearly twice the number who died from COVID-19.  About three quarters of those overdose victims had fentanyl in their systems.[1]  The catastrophic effect that these drugs—particularly fentanyl—have had on the city and the Tenderloin is evident within yards of this courthouse. The situation has become so dire that Mayor London Breed declared a state of emergency in the Tenderloin and the surrounding area on December 17, 2021.[2]  As the Mayor stated in her announcement of the emergency declaration, the "rapidly deteriorating conditions in the Tenderloin caused by the opioid crisis put the lives of San Franciscans in serious risk."

To ensure Defendant's appearance in court and to ensure the safety of the community, the government respectfully requests that the defendant be detained pending trial.

## II.    FACTUAL BACKGROUND

Edwin Mendoza was charged by complaint with selling fentanyl and methamphetamine in San Francisco's Tenderloin on June 28, 2022.  But the true extent of his conduct stretches back months.  Over the course of six controlled purchases starting in early April 2022 and ending in early July, Mendoza sold an undercover law enforcement officer more than half a *pound* of fentanyl and roughly 160 grams of methamphetamine.

On April 5, 2022, at the southeast corner of Seventh Street and Minna Street in San Francisco, an undercover officer approached Mendoza.  The officer asked for "yelo," which he understood as a street

---

[1] Trisha Thadani, et al., *San Francisco's fentanyl crisis: A disaster in plain sight*, S.F. Chron., Feb. 2, 2022 (https://www.sfchronicle.com/projects/2022/sf-fentanyl-opioid-epidemic/).

[2] "Mayor London Breed Declares State of Emergency in the Tenderloin," Dec. 17, 2021 (https://sfmayor.org/article/mayor-london-breed-declares-state-emergency-tenderloin). On December 23, 2021, the San Francisco Board of Supervisors voted to approve Mayor Breed's Emergency Declaration in the Tenderloin.  See "Board of Supervisors Approves Mayor London Breed's State of Emergency Declaration in the Tenderloin," Dec. 23, 2021 (https://sfmayor.org/article/board-supervisors-approves-mayor-london-breed%E2%80%99s-state-emergency-declaration-tenderloin).

UNITED STATES' DETENTION MEMORANDUM     2
3:22-mj-70879-MAG

term for fentanyl. Mendoza gave the officer 1.1 grams of a substance that lab tests later confirmed to contain fentanyl. Mendoza also gave the officer a phone number, which the officer used to contact Mendoza to arrange future purchases.

On April 11, 2022, the undercover officer and Mendoza arranged through text messages for a sale of $100 of fentanyl and $100 of methamphetamine the next day. On April 12, 2022, at Seventh and Minna Streets in San Francisco, the undercover officer and Mendoza met and exchanged $200 cash for one bindle of suspected methamphetamine and 5 small bags of suspected fentanyl. The substances tested presumptive positive for methamphetamine (14.5 grams) and fentanyl (5.0 grams), respectively.

On April 20, 2022, the undercover officer and Mendoza arranged through text messages for a sale of two ounces of fentanyl for $700. That afternoon, the undercover officer and Mendoza met at the Powell Street BART Station and exchanged $700 cash for two bags of suspected fentanyl. The substance tested presumptively positive for fentanyl (59.0 grams).

On May 4, 2022, the undercover officer and Mendoza arranged through text messages for another sale of two ounces of fentanyl for $700 and arranged to meet the next day. On May 5, 2022, the undercover officer and Mendoza met at Seventh and Minna Streets and exchanged $700 cash for two bags of suspected fentanyl. Lab reports confirmed that the substance contained fentanyl (56.0 grams).

On June 27, 2022, the undercover officer and Mendoza arranged through text messages and a call for another sale of two ounces of fentanyl and two ounces of methamphetamine and arranged to meet the next day. On June 28, 2022, the undercover officer and Mendoza met at the Powell Street BART Station and exchanged $1,200 cash for two bindles of suspected fentanyl and one of suspected methamphetamine. The substances tested presumptive positive for fentanyl (57.7 grams) and methamphetamine (29.6 grams), respectively.

On July 5, 2022, the undercover officer and Mendoza arranged for another sale at Powell BART the following day. The undercover officer asked Mendoza to bring three ounces of fentanyl and three ounces of methamphetamine. The next day—July 6, 2022—Mendoza came to Powell BART where officers arrested him. A backpack seized pursuant to a federal warrant contained 118 grams of suspected fentanyl and 116 grams of suspected methamphetamine (both of which tested presumptively positive)—roughly, the three ounces of each narcotic that the undercover officer had ordered.

Over the course of these six buys, between April 5 and July 5, 2022, Mendoza sold a total of about 297 grams of fentanyl and 161 grams of methamphetamine to the undercover officer.

### III.  LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

# IV. ARGUMENT

**A.     The 3142(g) factors demonstrate that Mendoza is a danger to the community.**

The nature of Mendoza's offense, the evidence against him, and his history all call for detention here. Mendoza threatens the community by distributing methamphetamine and fentanyl—a notoriously deadly controlled substance—on San Francisco streets. Eyewitness testimony, phone records, physical evidence, and video footage from at least one transaction leave no doubts that Mendoza did so throughout the spring and early summer of 2022. That conduct aligns with Mendoza's criminal past, which includes one conviction and several arrests for distributing narcotics. So the 3142(g) factors—as further discussed below—support detention to protect the community.

　　　　1.     *The nature of Mendoza's offense.*

Edwin Mendoza is in custody because he sold more than half a *pound* of fentanyl and 160 grams of methamphetamine over a series of six transactions. Fentanyl is an "incredibly lethal" substance 50 to 100 times more potent than heroin. *See* Stephanie Sierra, *'Dark reality': More people died from fentanyl last year than COVID-19 in this Bay Area County*, ABC 7 NEWS, April 6, 2022. In the first two months of 2022, fentanyl was San Francisco's leading cause of overdose deaths. *See* Luke N. Rhoda, *Report on Accidental Overdose Deaths*, March 18, 2022, (https://sf.gov/sites/default/files/2022-03/2022%2003_OCME%20Overdose%20Report.pdf). Last year alone, San Francisco saw some 475 fentanyl-related overdose deaths—more than one death per day and more deaths than resulted that year from the Covid-19 pandemic. *See Covid-19 Cases and Deaths*, July 12, 2022 (https://sf.gov/data/covid-19-cases-and-deaths#total-cases-and-deaths).

The *amount* of fentanyl—roughly 297 grams—that Mendoza sold to law enforcement shows the danger that he poses. According to the Drug Enforcement Administration, just two milligrams of fentanyl can be lethal depending on a person's body size, tolerance, and past usage. *See Facts About Fentanyl*, February 23, 2022 (https://www.dea.gov/resources/facts-about-fentanyl). At that rate, it is likely that Mendoza sold to law enforcement thousands of lethal fentanyl doses between April and July.

Mendoza's dealing isn't casual. Location data associated with Mendoza's cell phone shows that, between June 8 and June 30, 2022, Mendoza's device consistently traveled between Oakland and San

Francisco. For most of that time, Mendoza's device regularly traveled to the Tenderloin District in San Francisco. Mendoza is determined and aggressive: When he first met the undercover officer for a fentanyl sale in early April, Mendoza volunteered that he could also sell methamphetamine. Last summer and again this spring, Mendoza has returned to dealing narcotics in the Tenderloin within a few days or weeks of arrests by San Francisco police for drug-dealing.

Finally, Mendoza appears to use or conspire with others to commit his crimes: On April 12, 2022, when Mendoza sold the undercover officer five grams of fentanyl, he waved an unknown male over to the undercover officer's location and retrieved the fentanyl from that person's backpack. Likewise, a week later, when Mendoza on April 20 sold the officer roughly two ounces of fentanyl, he retrieved the fentanyl from a backpack held by an unknown male.[3] These facts demonstrate that Mendoza is a threat to San Francisco, injecting lethal substances into the city's blighted core and using others to extract his profits.

2. *The weight of the evidence.*

Mendoza is highly likely to be convicted of distributing fentanyl and methamphetamine. An undercover officer personally purchased narcotics from Mendoza on six occasions between April and July 2022. Each transaction took place in broad daylight, and at least one other police officer witnessed each transaction. At the first transaction on April 5, 2022, Mendoza gave the undercover officer a phone number, which the officer texted while present with Mendoza. The officer heard Mendoza's phone make a notification sound. The officer then communicated with Mendoza using that number, receiving multiple text messages confirming the price and location of the subsequent fentanyl sales. A later transaction where Mendoza sold two ounces of fentanyl was captured on video. Finally, field and laboratory tests of substances sold by Mendoza show that they contain fentanyl significantly in excess of the five-year mandatory minimum thresholds.

3. *Mendoza's history and characteristics.*

Mendoza is a serial recidivist who has continued to traffic narcotics despite a January 2022

---

[3] This is Mendoza's standard operating procedure: When San Francisco police arrested Mendoza in June 2021 for drug-dealing, they observed him retrieving a pill bottle from one male and storing a bag with a white substance with another male.

conviction for drug-dealing and multiple other narcotics-related arrests. He committed the instant offense while on probation for the January conviction. He was once arrested twice within three days for dealing drugs in San Francisco's Tenderloin neighborhood. And he sold the narcotics supporting the instant offenses barely a month after a May SFPD patrol arrest—unconnected to this investigation—where officers found Mendoza with cocaine salt and base and more than two ounces of suspected fentanyl. A brief recital of Mendoza's encounters with law enforcement over the past year makes plain the danger that Mendoza poses to the community:

- On June 14, 2021, Mendoza was arrested in San Francisco's Tenderloin neighborhood for possessing controlled substances—methamphetamine and cocaine base—for sale. (He pled guilty to this charge, a violation of Cal. H&S § 11351, in January 2022.)
- Two days later, on June 16, 2021, Mendoza was again arrested in San Francisco's Tenderloin neighborhood for possessing controlled substances—this time including fentanyl, methamphetamine, and cocaine base—for sale.
- Ten days after that, on June 26, 2021, Mendoza was arrested for violating stay-away orders that barred him from certain areas in the Tenderloin neighborhood.
- On October 6, 2021, Mendoza was arrested in San Francisco's Tenderloin neighborhood for possessing controlled substances—including fentanyl, methamphetamine, and cocaine base and salt—for sale.
- Two weeks later, on October 20, 2021, a police officer recognized Mendoza in the Tenderloin neighborhood and saw him exchange money for white objects. Mendoza saw the officer and fled. The officer gave chase, picking up a backpack that Mendoza discarded before losing Mendoza on a departing BART train. Officers later searched the backpack and identified 54 grams of presumptive fentanyl and 15 grams of presumptive methamphetamine. About two weeks after that, on November 2, 2021, officers again saw Mendoza in the Tenderloin neighborhood and arrested him on narcotics charges.

This history demonstrates that Mendoza's drug-dealing in the spring and early summer of 2022 was no accident. Mendoza has repeatedly demonstrated a determination to walk the Tenderloin with fentanyl and methamphetamine for sale. Arrests and even convictions have failed to deter him: Pretrial

UNITED STATES' DETENTION MEMORANDUM    7
3:22-mj-70879-MAG

detention is necessary.

**B.     In addition to the community danger that Mendoza poses, he is a serious flight risk.**

Mendoza has little reason to stay in the Bay Area and every reason to flee. The government knows of no community ties held by Mendoza: no legal job, no local family, and no affiliations with community groups. A Honduran national, Mendoza likely has family abroad and faces a possibility of removal upon conviction: Law enforcement searched Mendoza's home after his arrest in this case and found a putative Green Card with Mendoza's name but bearing an alien number associated with a 72-year-old Honduran national (Mendoza is 26 years old). In addition, Mendoza likely has means to flee: During the May 2022 drug-dealing arrest by local law enforcement, officers recovered more than $1,200 in cash from Mendoza's person. Access to such cash, which is consistent with street-level narcotics trafficking, means Mendoza could easily fund travel outside the Bay Area or country.

Moreover, Mendoza also has a history of flight and disrespecting release conditions. He violated stay-away orders in June 2021. Three times in October and November 2021, he attempted to evade pursuing officers—once successfully. He committed the instant offense while on probation for his January 2022 narcotics conviction. (His probation compliance also appears delinquent: Alameda County issued a warrant for his arrest just two weeks ago.) And when officers arrested him on July 6 in connection with the instant offense, Mendoza again tried to run.

Finally, Mendoza has reason to flee because conviction is likely and his sentence will be lengthy. As explained above, the formidable evidence against Mendoza includes eyewitness testimony, phone records, physical evidence, and video footage. He faces a five-year mandatory minimum for the fentanyl offense; he could face a ten-year mandatory minimum for the methamphetamine.

### V.     CONCLUSION

Given the circumstances outlined above, there are no set of conditions that will reasonably assure the appearance of the defendant at court proceedings. The Court should detain Mendoza pending trials.

DATED: July 12, 2022                                         Respectfully submitted,

                                                             STEPHANIE M. HINDS

UNITED STATES' DETENTION MEMORANDUM     8
3:22-mj-70879-MAG

|   |   |
|---|---|
| 1 | United States Attorney |
| 2 | |
| 3 | /s/ Zach Abrahamson |
| 4 | |
| 5 | ZACHARY G.F. ABRAHAMSON<br>Special Assistant United States Attorney |